# John R. Giles *vs.* Maria Ebsworth and John Hays.

A power of attorney appointing an agent to rent out a house, "collect and *receive the rents therefor,*" and to use all lawful remedies, actions, distress, and other necessary proceedings, and generally to do for and in the name of the party giving the power, whatever the agent "may deem necessary and proper for securing and recovering the same," authorises the agent to levy a distress for rent due before its execution.

In an avowry for rent the tenant cannot offer in evidence a deed dated *prior to the lease,* "for the purpose of showing that at the time of making the distress the avowant had not the legal title to the premises and therefore could not distrain;" a tenant cannot dispute his landlord's title, though he may show that it has expired.

Taking security for the rent does not forfeit the remedy by distress; and taking the tenant's note for the rent, without an agreement that it should operate *as satisfaction* therefor, can only suspend the remedy by distress until it becomes due, after which the landlord may distrain, even though he has *negotiated the note,* provided he takes it up at maturity.

A prayer, "that the authority offered in evidence by the avowant is insufficient to sustain the distress relied upon," is bad for *uncertainty,* it not clearly appearing, whether it relates to the warrant to distrain and the proceedings thereunder, or to the authority under which the avowant's agent acted, which was also given in evidence.

A warrant of distress may be directed to a *sheriff,* and he may execute it by one of his *sworn deputies:* since the act of 1834, ch. 192, a landlord cannot execute *his own distress.*

The landlord's remedy by distress is not confined to the goods of his tenant: he may take *any goods on the premises* which are not exempted by law,

The proceeding by distress, authorised by the act of 1834, ch. 192, are void, unless the provisions of the act are complied with, and in an avowry for rent, the warrant to distrain and the proceedings under it, are facts to be *found by the jury,* and they must appear to be correct.

A prayer, which does not leave it to the jury to find the warrant and the pro-

ceedings under it, but *assumes* every thing to have been done which the law requires, is erroneous.

APPEAL from the Superior Court of Baltimore city.

*Replevin,* brought by the appellant against the appellees, for the recovery of certain goods. The defendants *avowed* the taking under a distress for two quarters' rent due Mrs. Ebsworth under a lease from her to one Joseph Tucker. The plaintiff *pleaded* that Tucker did not, during the time, possess and enjoy the premises under a lease from Mrs. Ebsworth; and there was an agreement to waive all errors in pleading, and that special matter might be given in evidence, under the above plea and avowry, as if pleaded.

*1st Exception.* The defendants, after having given sufficient notice to the plaintiff's counsel to produce the original lease referred to in the avowry, and it not being produced, proved, by John W. Mortimer, that he, as agent of the avowant, leased, by contract in writing, to Tucker, the store and dwelling known as No. 112 Baltimore street, for five years, commencing on the 1st of May 1849, at an annual rent of $700, payable quarterly, on the first of May, August, November and February, and that Tucker entered under this lease; that at the time of the levy of the distress rent was in arrear for the two quarters ending on the 1st of August and November 1852; and then offered to prove by this witness the following authority to him, as agent, to make the distress:

"I hereby constitute and appoint John W. Mortimer, of the city of Baltimore, in the State of Maryland, my true and lawful agent, to rent out my house, No. 112, on the north side of Baltimore street in said city, and to collect and receive the rents for the same, and to use all lawful remedies, actions, distress, and other necessary proceedings for the recovery of the same, and to employ any and all manner of agents or bailiffs, in my name, and for me to make distress for, or otherwise recover said rents, and generally to do for me and in my name whatever he may deem necessary and proper for the securing and recovery of said rents, or any part thereof. Given under my hand and seal, this first day of December 1852.

MARIA EBSWORTH, (Seal.)

To the admissibility of this evidence the plaintiff objected, upon the ground that this power of attorney was no authority to the witness to levy a distress for rent which had accrued prior to its execution. This objection the court, (FRICK, J.,) overruled, and admitted the evidence, and the plaintiff excepted.

*2nd Exception.* It was then proved that Tucker made and delivered to Mortimer, on the 1st of June 1852, the day of its date, his promissory note for $175,87, at three months, payable to the order of Mortimer and Mowbray, for the quarter's rent to become due on the 1st of August 1852, Mortimer giving, as agent of Mrs. Ebsworth, the following receipt attached to a bill made out against Tucker for the rent and interest till the note would mature: "Rec'd note at three months from June 1st, 1852." This note the avowant produced at the trial, and offered to surrender it to the plaintiff. Mortimer also proved in relation to this note, that it was not taken *in satisfaction* of the rent, but given and received for Tucker's accommodation in the payment of that quarter's rent; that a few days after its receipt witness had it discounted by the Union Bank, and remitted a portion of the proceeds to the avowant, residing in New York; *that* whilst this note was running, Tucker told witness he had made an assignment to one Richardson; *that* the note was paid by witness on the day it became due, (it having been endorsed to the Bank, by the firm of Mortimer & Mowbray, of which witness is a member,) and has remained in his possession up to the time of trial; *that* he never presented it for payment to Richardson trustee of Tucker; *that* some time in July 1852, the plaintiff called upon witness and said he was about to purchase from Tucker, his unexpired interest in the lease, and asked him how the rent stood, to which witness replied, that he held Tucker's note for the rent to the 1st of August 1852, but did not tell him that it had been discounted, or when it became due; *that* he has no recollection of saying to the plaintiff, at that time, that he had no apprehension the note would not be paid at maturity, nor that he would be happy to have the plaintiff as a tenant; *that* the plaintiff called on him to know whether he would give an extension of Tucker's lease, which witness declined to do

until Tucker's time was out; *that* some time in August 1852, the plaintiff called on witness and said, the roof of the house was in a leaking condition, and asked witness for authority to repair it, which he at first refused to give, as it would be interfering with Tucker's lease, but finally gave him such authority: but he does not know whether the roof was ever repaired; *that* nothing was then said by either party, about the rent which had become due on the 1st of August; *that* on the 4th of September 1852, witness sent the plaintiff a note informing him that Tucker owed Mrs. Ebsworth one quarter's rent, and asking whether he had made any arrangement with the plaintiff for its payment; *that* on the 1st of November of that year, the plaintiff tendered witness the quarter's rent, due on that day, which he refused to take, unless all the rent in arrear was paid. This witness also proved, that he was now in advance to the avowant $200, on account of this rent.

It was further proved, that in July 1852, Tucker assigned his interest in the lease to the plaintiff for a bonus of $300, and gave him possession of the dwelling a short time before the 1st of August of that year, but that he did not get possession of the store until some time in September following, and that the plaintiff paid Tucker the rent for the dwelling until he got possession of the whole premises; *that* on the 15th of August 1852, Tucker made an assignment of all his property to Richardson, for the benefit of his creditors, and that the goods which he had, remained in the store until some time in September, when they were sold by the trustee. It was also proved, that the plaintiff has paid to the attorney of Mrs. Ebsworth, all the rent which has accrued since the 1st of November 1852. The attorney for the plaintiff proved that he stated to the attorney of Mrs. Ebsworth, that the plaintiff, when he first employed witness in the matter, had told witness that Mortimer had said to him, that all the rent had been paid by note up to the 1st of August, and that he had no apprehension that the note would not be paid at its maturity; and also, further said to plaintiff, that he would be happy in having him for a tenant. The record then states, that the avowant offered in evidence the "following *warrant* to distrain,"

directed to John Hays, sheriff, and the proceedings under the same. (The warrant, dated December 7th, 1852, is signed by Mortimer, as agent for Mrs. Ebsworth, and directs the sheriff, in the usual form, to distrain the goods of the plaintiff in the house in question, "for $350, being two quarters' rent, due me for the same on the first day of November last." The record does not show that any *account and affidavit* were attached to the warrant.) It was proved that the distress was levied, and all the proceedings under it conducted by a *deputy sheriff*, and that the sheriff never entered in person on the premises, and was not present at any time, when the distress was being made.

The plaintiff then offered in evidence a deed of the premises, dated the 17th of May 1839, from Mrs. Ebsworth to John W. Mortimer, by which the property was conveyed to the grantee in fee-simple *in trust*, to permit the grantor during her life to possess and enjoy the same, "and the rents, issues, income and profits thereof to receive, take and apply to her own use and benefit," and the receipts of the grantor "alone shall be good and effectual acquittances and discharges for such rents," &c., and after her death, the property "to descend and become the estate and property of her children." This deed was offered for the purpose of showing, that at the time of making said distress the avowant had not the legal title to the premises, and therefore could not distrain. To the admissibility of which evidence the avowant objected, the court sustained the objection, and the plaintiff excepted.

*3rd Exception.* The avowant then asked an instruction to the jury, that if they find the lease from Mortimer, as agent for Mrs. Ebsworth, to Tucker, as stated in Mortimer's evidence, the sale of his unexpired term by Tucker to the plaintiff, and that two quarters' rent amounting to $350, was in arrear and unpaid, before the distress given in evidence was issued and levied, then the avowant is entitled to recover, notwithstanding her agent, Mortimer, took the note of Tucker for the quarter's rent due in August 1852, as stated in the evidence, unless the jury further find that this note has been paid. This prayer the court granted, and the plaintiff excepted.

43    v.10

*4th Exception.* The plaintiff then asked instructions to the jury, in substance as follows:

1st. This prayer asserts, that the distress was wrongful and the avowant could not justify under it, if the jury find that during the continuance of the lease to Tucker, the plaintiff, and Mortimer as agent of Mrs. Ebsworth, agreed that Tucker should be discharged and the plaintiff adopted as tenant, and that the plaintiff entered in pursuance of this agreement on or before the 1st of August 1852.

2nd. That if the jury find that Mortimer, as agent for the avowant, received from Tucker the note offered in evidence, for the rent to become due on the 1st of August 1852, and gave the receipt therefor offered in evidence, and before its maturity passed the same to the Union Bank for discount, and its discount by the bank, and that he remitted the proceeds or any part thereof to the avowant before the distress was levied, then avowant cannot justify under the distress, though the jury may find the note was not paid by Tucker at maturity.

3rd. If the jury find from all the evidence, that this note was received by Mortimer, as agent, in full satisfaction and discharge of the quarter's rent due on the 1st of August 1852, the avowant is not entitled to justify under the distress, though they find the note was not paid at maturity.

4th. If the jury find from all the evidence, that all the amount of rent has been remitted by Mortimer, the agent, to Mrs. Ebsworth, including the two quarters' rent distrained for, then the avowant cannot justify under the distress offered in evidence.

5th. That the authority offered in evidence by the avowant, is insufficient to sustain the distress relied upon.

6th. This prayer asserts that the distress was wrongful, because it was levied, and all the proceedings under it were executed, by a deputy sheriff; the warrant having been directed to the sheriff, who never entered upon the premises.

7th. This prayer denies the avowant's right to recover, if the jury find from all the evidence, that the plaintiff before entering as tenant, called on the agent of the avowant and inquired what rent was due, and that such agent stated that

all the rent had been paid by note up to the 1st of August 1852, and that he had no apprehension that the note would not be paid at maturity, and did not disclose when the note became due, and that there was any misrepresentation or wilful silence on the agent's part, as to any fact relating to the rent, whereby the plaintiff was induced to become the tenant; and that such agent, by a fair and proper discharge of his duty to his principal, could have made the quarter's rent from the goods of Tucker on the premises.

8th. That if the jury find that the note in proof was received by Mortimer, on account of the quarter's rent due August 1st, 1852, and was in his possession at the time the distress was levied, then the distress was premature and illegal; unless the jury find that notice was given to the tenant in possession, of the intention to levy the same by the avowant, or that the note was tendered to the plaintiff before the levy, *provided* they find that before the plaintiff took possession, Mortimer told him he held the note on account of the rent, which he had no doubt would be paid.

The court granted the first prayer and refused the others. To this refusal the plaintiff excepted, and the verdict and judgment being against him, appealed.

Upon motion of the appellees a writ of diminution was granted, to correct the omission of the *account and affidavit* attached to the warrant to distrain, contained in the *second exception.* Under this writ the defendants moved the court to amend the record, by ordering the clerk to insert in the second exception, immediately before, and as annexed to the warrant to distrain, the account and affidavit filed with the motion, and referred to in the deposition of the defendant's attorney, taken in support of the motion. This deposition is to the effect, that the account and affidavit were upon the same sheet of paper with the warrant, when it was offered in evidence at the trial, but that now this sheet, in its entirety, cannot be found among the papers in the cause in the clerk's office, but only that half of the sheet containing the warrant to distrain; and that the account and affidavit proposed to be inserted in the exception, are copies as nearly as deponent can recollect of

those upon the paper at the time of trial. The court, (Lee, J.,) passed an order directing the clerk to insert this account and affidavit in the second exception as indicated by the motion. To the passage of this order the plaintiff excepted, as also to the taking of depositions for the purpose of amending, altering or adding to the matter, form and substance of the said *second exception*, because the court has not, either under its practice, or under the writ of diminution, any warrant or authority in law so to do. But the court overruled these exceptions, and ordered the clerk to amend the second exception as directed by the former order, and these proceedings were, in pursuance of the command of the writ of diminution, certified to the appellate court.

The cause was argued before Le Grand, C. J., Eccleston, Tuck and Mason, J.

*Edward Holloway* and *T. Yates Walsh* for the appellants, argued :

1st. That the power of attorney given by the avowant to Mortimer, dated the 1st of December 1852, was no authority to him to levy a distress for rent, which had accrued due prior to the time of its execution.

2nd. That the deed of trust from Mrs. Ebsworth to Mortimer, dated the 17th of May 1839, and offered in evidence by the appellant was admissible, for the purpose of showing that the avowant had not the legal title to the premises at the time the distress was levied, and clearly shows that such was the case. 32 *Eng. C. L. Rep.*, 374, *Pascoe vs. Pascoe*. *Bradby on Distress*, 89, 96, 100. 58 *Eng. C. L. Rep.*, 1033. *Pollock vs. Stacy*, 53 *Law Lib.*, 116. 3 *H. & McH.*, 1, *Tschudy vs. The State*. 7 *Md. Rep.*, 346, *Hintze vs. Thomas*.

3rd. That the taking by Mortimer of the note of Tucker, for the rent to become due on the 1st of August 1852, and the subsequent discount of this note by the Union Bank, and the remittance of a portion of the proceeds thereof to the avowant, destroyed the right to distrain for that quarter's rent. 5 *Term Rep.*, 513, *Kearslake vs. Morgan*. 5 *Johns.*, 68, *Tobey vs.*

*Barber.* 11 *Do.*, 518, *Witherby vs. Mann.* 6 *H. & J.*, 166, *Patapsco Ins. Co., vs. Smith.* 2 *G. & J.*, 493, *Glenn vs. Smith.*

4th. That it was a question for the jury, whether or not Mortimer took this note *in payment and satisfaction* for that quarter's rent, and the court therefore erred in refusing the appellant's *third* prayer and granting that of the avowant, which took that question from the jury. And the avowant's prayer is also bad, because, it took from the jury the question whether that portion of the proceeds of the discount of the note, admitted to have been remitted by Mortimer to the avowant, was a loan to the tenant or an advance to the landlord, and also because it *assumes* both the fact of the distress and the levy, and the regularity of both, and of every thing connected therewith. 3 *Gill*, 31, *Bullitt vs. Musgrave.* 4 *Md. Rep.*, 242, *Balto. & Susq. Rail Road Co., vs. Woodruff.* 14 *Eng. Law & Eq. Rep.*, 371, *Parrott vs. Anderson.* 5 *Md. Rep.*, 389; *Yates vs. Donaldson.*

5th. That the warrant to distrain and the proceedings had under the same, and offered in evidence by the avowant, are *not sufficient* in law to justify the taking of the appellant's goods. The omission of the account and affidavit, required to be annexed to the warrant, is a *fatal defect.* Act of 1834, ch. 192. 5 *Md. Rep.*, 195, *Joynes vs. Wartman.* This question arises under the appellant's *fifth* prayer, and also under the avowant's prayer, which asserts the right of the avowant, notwithstanding this omission.

6th. That the warrant to distrain being directed to the sheriff, did not authorise him to appoint a deputy to make the distress which was therefore wrongful. 35 *Eng. C. L. Rep.*, 256, *Toplis vs. Grane.* 5 *Denio.*, 545, *Lord vs. Brown.* 5 *Barbour*, 286, *Moulton vs. Norton.* It is no part of the *official duty* of a sheriff, to execute a distress. No such power is given to him in his *official capacity* by any act of Assembly. By the act of 1825, ch. 21, a constable is required to execute a distress warrant, but before that time he was not required to do it.

7th. That it was a question for the jury, whether or not the

agent of the avowant had, by any fraud or misrepresentation, induced the appellant to become the tenant of the premises. 6 *Md. Rep.*, 255, *Mayor & C. C. of Balto., vs. Williams.*

*I. N. Steele* for the appellees argued:

1st. That the power of attorney from Mrs. Ebsworth to Mortimer, authorised the collection by distress or otherwise, of all rent due and unpaid after its date.

2nd. That the deed of trust offered in evidence by the appellant "for the purpose of showing that the avowant had not the legal title to the premises and therefore could not distrain," was properly excluded:—1st. Because upon its true construction and legal effect, which were questions for the court, it could not avail the appellant for the purpose for which he offered it. 3 *Md. Rep.*, 548, *Ware vs. Richardson.* 14 *Mees. & Wels.*, 172, *Williams vs. Waters;* and 2nd. Because the appellant was estopped from denying the title of the avowant. *Comyn on Landlord & Tenant, in* 6 *Law Lib.*, 293, 294, and cases there cited.

3rd. That the appellees' prayer was properly granted, and the second and third prayers of the appellant properly refused: 1st, because the taking of Tucker's note by Mortimer for one quarter's rent, and his having the same discounted, and the remittance of part of the proceeds to the avowant, did not take away the right of the avowant to distrain after the note was overdue and unpaid. 2 *G. & J.*, 493, *Glenn vs. Smith.* 5 *Md. Rep.*, 389, *Yates vs. Donaldson.* 29 *Eng. C. L. Rep.*, 166, *Davis vs. Gyde;* and 2nd, because there was no evidence that this note was received in *satisfaction* of the rent for which it was given.

4th. That the *fifth* prayer of the appellant was properly rejected: 1st, because it is vague and uncertain, and might have misled the jury; 2nd, because, "the authority offered in evidence by the avowant," whether these words refer to the power of attorney to Mortimer, or the warrant to the sheriff, was sufficient to justify the distress; and 3rd, because even if there was any irregularity in the proceedings had under the warrant to distrain, which is denied, no question in reference to these proceedings is presented by this prayer.

Giles *vs.* Ebsworth & Hays.

5th. That the warrant to distrain being directed to the *sheriff*, and not to the *bailiff of the landlord*, was properly and legally executed in the *sheriff's name* by one of his deputies; and the sixth prayer of the appellant was, therefore, properly rejected. *Watson on Sheriff in* 7 *Law Lib.*, 17, 20, 25. *Acts of* 1825, *ch.* 21; 1834, *ch.* 192, *sec.* 4, and 1842, *ch.* 208 *sec.* 1. 17 *Wend.*, 35, *Van Renselaer vs. Quackenboss.* 2 *Kinney's Law Comp.*, 581, and cases there cited.

6th. That the seventh prayer of the appellant was properly rejected: 1st, because there is no evidence in the cause that Mortimer, even if the avowant could be held responsible for his fraudulent misrepresentations, did, by any fraud or misrepresentation, induce the appellant to become the tenant of the premises; and 2nd, because the various facts recited in this prayer did not constitute a valid defence against the right of the avowant to distrain.

*Note.*—The argument upon the question, whether the record could be amended, as was done, under the writ of diminution? is omitted, inasmuch as the case was decided upon other points.

TUCK, J., delivered the opinion of this court.

The first exception in this record relates to the authority from Mrs. Ebsworth to Mortimer, under which the distress was laid, it being contended, on the part of the appellant, that it did not authorize the collection of rents due at its date. The paper does not, in terms, confine Mortimer to the collection of such rents as might arise under leases to be made thereafter by him, but confers power to receive rents generally, and to use means to that end as fully as Mrs. Ebsworth herself might employ. We agree with the court below, that it was sufficient for the purpose for which it was offered in evidence, that is to say: to prove Mortimer's authority to act, in this case, as her agent.

The second exception was taken to the admissibility of a deed from Mrs. Ebsworth to Mortimer, dated in 1839, for the property demised, offered by the appellant "for the purpose of showing, that at the time of making the distress the avowant had not the legal title to the premises, and therefore could

not distrain.'' A tenant cannot dispute the landlord's title, though he may show that it has expired. This deed was not offered for this latter purpose, on the concession that the title was in the appellee at the time of the lease.' Its effect, according to the appellant's construction, would have been to deny her title at that time, as well as on the day of the distress; and was properly rejected. We express no opinion on the construction of the deed, but dispose of this exception on the hypothesis, that it passed the title to Mortimer.

The plaintiff below offered eight prayers, all of which were refused, except the first.

The *second*, *third* and *eighth*, relate to the note of Tucker, taken by the appellant's agent, for one quarter's rent. It is clear, that taking security does not forfeit the remedy by distress. *Act of* 1842, *ch.* 208. The promissory note of the tenant *ought not to have any greater effect than that of another person*, or any other security passed by him to the landlord. What difference can it make to the tenant, that his note is discounted, provided it be in the hands of the landlord to be surrendered at the proper time? It appears to have been taken for the tenant's accommodation, and could only operate as a suspension of the other remedy until it became due. When a party takes a negotiable instrument, we are not to infer a collateral agreement, that the holder is not to use it. The law makes no such presumption. Why change the form of the transaction at all, if the party was not to have such benefit from it, in its new form, as he might derive from other paper of the same kind? It was the tenant's duty to have paid this note himself. As he did not, and it was taken up by the agent of the appellee, the remedy by distress was properly resorted to. There was no agreement that it should operate as satisfaction, nor any evidence legally sufficient to warrant that inference. It was in possession of the avowant, at the trial, and tendered to the appellant, and that is all that the law requires. The refusal of these three prayers is therefore affirmed.

The *fourth* prayer was properly rejected, because there was no evidence tending to show, that all the rent had been remit-

ted by Mortimer to the avowant. The only evidence on the point, related to part of the quarter's rent for which the note was given.

The *fifth* prayer has been treated by the appellant's counsel, as if it related to the warrant to distrain, and the proceedings in pursuance thereof. We think it might as reasonably apply to the authority under which Mortimer acted as agent, and, for its uncertainty, was well refused.

The *sixth* prayer presents the question, whether, when a warrant to distrain is directed to a sheriff, he may execute it by one of his sworn deputies? It has been the practice to employ sheriffs and constables for this purpose. The act of 1825, ch. 21, authorises the latter officer to act, and allows him the fees paid to sheriffs for similar services, which would seem to recognize the sheriff's authority in such cases. But, aside from this view of the question, the landlord may direct his warrant to a bailiff, and if he cannot find any person to act in that capacity, is his remedy to fail? Before the act of 1834, ch. 192, he might have executed his own distress, but now a warrant is required, which we understand to be a denial of the landlord's right to act for himself. The remedy being given in terms, by the act, and no person being specified who is obliged to act for the landlord, there may be a necessity for directing the warrant to an officer of the law, and if such officer has deputies known to the law, their acts done in his name must be taken as his acts. Besides, the act of 1834, recognises sheriffs, constables and bailiffs, as competent to levy these warrants.

The *seventh* prayer submits to the jury, to find that the appellant became tenant of the premises, in consequence of the misrepresentations or wilful silence of Mortimer, as agent, when there is no such evidence in the cause. And it also assumes, as law, that so long as any goods of Tucker were on the premises, the property of Giles could not be distrained. The landlord's remedy is not confined to the goods of his tenant; he may take any on the premises, not exempted by law; and there is nothing to show a right of exemption in this case.

44　　v.10

For these reasons we think the court ruled correctly, in rejecting the above prayers of the appellant.

The avowant also offered a prayer, which we are of opinion ought not to have been granted. It was decided in *Joynes vs. Wartman*, 5 *Md. Rep.*, 195, that the distress proceedings authorized by the act of 1834, are void, unless the provisions of the act are complied with. The warrant and proceedings are facts to be found by the jury, and they must appear to be correct. In this prayer the jury was not required to find whether there was any warrant, or other proceedings under the distress, but every thing is assumed to have been done which the law required. We cannot overlook defects of this kind. Such has been the law of this court for many years, and numerous cases have been determined on similar grounds. For this reason the judgment must be reversed, and the cause remanded under a *procedendo*.

In thus disposing of the case, it becomes immaterial whether the record be amended or not, for, upon the new trial, it will be competent to the parties to supply the missing account and affidavit, on proving the loss of them.

*Judgment reversed and procedendo awarded.*